IN RE: WILLIAMSON VILLAGE CONDOMINIUMS

No. COA07-217

(Filed 18 December 2007)

**Housing— commercial condominium buildings—North Carolina Condominium Act—substantial compliance— development time limit**

A commercial condominium developer substantially complied with the Condominium Act even though the declaration did not include a development time limit for the exercise of reserved development rights and thus could build an additional condominium building on the property because: (1) the Condominium Act under N.C.G.S. § 47C-2-101(a) excuses nonmaterial noncompliance with its requirements where the declarant has substantially complied in good faith with the material requirements of the statute; (2) the omission of the development time limit was a nonmaterial omission, and the evidence demonstrated that both parties contemplated and expected that plaintiff would construct Building Two at an unspecified future time; (3) defendants approved the declaration with the time limit omitted, and never expressed any concern over construction timing until more than

**IN RE WILLIAMSON VILLAGE CONDOS.**

[187 N.C. App. 553 (2007)]

five years after they approved the plat and declaration; (4) other than the omission of a time limit for the exercise of reserved developments rights, the declaration contained every other relevant component either mandated by the Act or considered to be material by the parties; (5) even where the General Assembly uses mandatory language such as "shall" or "must," it may still excuse noncompliance with the use of a substantial compliance clause; (6) if the General Assembly did not intend for the substantial compliance clause in N.C.G.S. § 47C-1-104(c) to apply to the declaration content requirements of N.C.G.S. § 47C-2-105, it would have excluded that section from its reach; and (7) although the omission of a development time limit may preclude a finding of substantial compliance in cases where the timing of future construction is a material factor in a condominium project, this case does not present such a situation.

Judge TYSON dissenting.

Appeal by Plaintiff from order entered 20 November 2006 by Judge Preston Cornelius in Superior Court, Iredell County. Heard in the Court of Appeals 19 September 2006.

*McIntosh Law Firm, by James C. Fuller and Prosser D. Carnegie, for Plaintiff-Appellant.*

*Eisele, Ashburn, Greene & Chapman, PA, by Douglas G. Eisele, for Defendants-Appellees.*

McGEE, Judge.

Williamson Village Partners, LLC (Plaintiff) is a commercial real estate firm. Plaintiff purchased a tract of land in Iredell County on 30 August 1999, with the intent of constructing two commercial condominium buildings (Buildings One and Two) on the property. Each building was to contain three condominium units. Before Plaintiff began construction on Building One, Ben S. Thomas, T. Michael Godley, and Mark L. Childers (Defendants)[1] entered into a contract to purchase one of the condominium units in Building One. The contract for sale referenced the "commercial condominium project to be constructed by [Plaintiff] . . . including Two (2) separate buildings." Under the terms of the contract, Defendants retained the right to approve the final plat and condominium declaration (the

---

1. Defendants are the named partners of the law firm Thomas, Godley & Childers.

Declaration), which Plaintiff was required to record pursuant to N.C. Gen. Stat. § 47C-1-101 et seq., the North Carolina Condominium Act.

Plaintiff and Defendants worked together to prepare the Declaration and plat. Defendants submitted suggestions to Plaintiff in January 2000 regarding a draft declaration and communicated additional comments and concerns regarding construction of Building One in May and July 2000. None of these concerns directly referenced Building Two. Plaintiff provided Defendants with updated copies of the Declaration and plat for final approval in or around late July 2000. The plat showed the location of Building One and included the future boundary of Building Two, with the following notation: "EXTENTS OF FUTURE BUILDING . . . 'NEED NOT BE BUILT.' " The Declaration included the following provision:

> Section 16.1 Development Rights. Declarant hereby reserves the right to exercise those Development Rights granted herein and under the Condominium Act on existing and additional properties that will be brought under this Declaration of Condominium and as shown in Condominium Book 1 at Pages 105, 106 & 107 recorded in the Iredell County Register of Deeds.

Defendants approved the Declaration and plat, and Plaintiff recorded the documents on 26 July 2000. Plaintiff conveyed a condominium unit in Building One to Defendants on 4 August 2000.[2] The deed referenced Plaintiff's right, reserved pursuant to the Declaration, to construct additional condominium units on the property.

Plaintiff conveyed the second condominium unit in Building One to Linda L. Cherry in May 2002 and the third unit in Building One to FLC Investments in January 2006. Plaintiff made both these grantees aware of its plans to construct Building Two adjacent to Building One. There is no evidence in the record that either of these grantees objected to the future construction of Building Two.

Plaintiff apparently had intended to begin construction on Building Two shortly after it sold the last unit in Building One to FLC Investments. However, in late 2005, Defendants raised objections to the new construction. Specifically, Defendants claimed that the terms of the Declaration did not permit Plaintiff to proceed with the

---

2. The deed conveyed a one-third undivided interest in the condominium unit to Ben S. Thomas and his wife, Angela L. McConnell; a one-third undivided interest to Mark L. Childers and his wife, Pamela J. Hendricks; and a one-third undivided interest to T. Michael Godley and William R. Carson as joint tenants. All six owners of the condominium unit are defendants in this action.

construction. There is no evidence in the record that Defendants brought this concern to Plaintiff's attention at any time between 1999 and late 2005.

Plaintiff filed a complaint for declaratory judgment in Iredell County Superior Court on 16 February 2006. The complaint attempted to join the owners of all three condominium units in Building One as real parties in interest. Neither Linda L. Cherry nor FLC Investments responded to the complaint. Defendants filed an answer and moved for summary judgment, claiming that Plaintiff did not retain the right to construct Building Two because the terms of the Declaration did not comply with the North Carolina Condominium Act. The trial court granted Defendants' motion, "render[ing] void ab intio [sic] any alleged right of Plaintiff, its successors or assigns, to construct any further buildings." The trial court also noted that its order bound the nonresponding owners of the additional condominium units in Building One.

Plaintiff appeals the trial court's order and argues, *inter alia*, that it retained its development rights because the Declaration substantially complied in good faith with the material requirements of the Condominium Act. We agree.

## A.

A trial court should grant a motion for summary judgment if, when taken in the light most favorable to the non-moving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2005). We review a trial court's grant of a motion for summary judgment *de novo*. *Robins v. Town of Hillsborough*, 361 N.C. 193, 196, 639 S.E.2d 421, 423 (2007).

Under the North Carolina Condominium Act (the Act), "[a] declaration creating a condominium . . . shall be recorded in every county in which any portion of the condominium is located." N.C. Gen. Stat. § 47C-2-101(a) (2005). The Act lists more than a dozen specific items that must be included in the declaration, including, *inter alia*, a name for the condominium complex, a description of the property, and any use or occupancy restrictions. N.C. Gen. Stat. § 47C-2-105(a)(1), (3), (12) (2005). In addition, the declaration must contain "[a] description of any development rights and other special declarant rights reserved by the declarant, together with a legally suf-

ficient description of the real estate to which each of those rights applies, *and a time limit within which each of those rights must be exercised*[.]" N.C.G.S. § 47C-2-105(a)(8) (emphasis added). However, the Act excuses nonmaterial noncompliance with these requirements where the declarant has substantially complied with the statute. *See* N.C. Gen. Stat. § 47C-1-104(c) (2005) ("If a declarant, in good faith, has attempted to comply with the requirements of [the Act] and has substantially complied with [the Act], nonmaterial errors or omissions shall not be actionable.").

## B.

Plaintiff admits that the Declaration does not contain a development time limit, but argues that this omission is excusable under the "substantial compliance" clause in N.C.G.S. § 47C-1-104(c). For the Declaration's noncompliance to be excused, Plaintiff, in good faith: (1) must have attempted to comply with the Act, and (2) must have substantially complied with the Act. In addition, the omission of the development time limit must be a nonmaterial omission. *See id.*

Defendants do not allege that Plaintiff acted in bad faith, nor do Defendants allege that Plaintiff did not attempt to comply with the Act. The question, then, is whether Plaintiff substantially complied with the material provisions of the Act. Our Supreme Court has defined "substantial compliance" as "a compliance which substantially, essentially, in the main, or for the most part, satisfies the [statute's requirements]." *Bank v. Burnette*, 297 N.C. 524, 532, 256 S.E.2d 388, 393 (1979).

The Act contains numerous requirements for condominium creation and operation. Many of the Act's requirements, both in N.C.G.S. § 47C-2-105 and elsewhere, deal with the contents of a condominium declaration. The Declaration at issue in the current case is a comprehensive thirty-five-page document that closely follows the Act's mandates. Among its other provisions, the Declaration includes: the names of the condominium complex and condominium association, *see* N.C.G.S. § 47C-2-105(a)(1); the name of the county in which the condominium complex is located, *see* N.C.G.S. § 47C-2-105(a)(2); a description of the real estate in the condominium, *see* N.C.G.S. § 47C-2-105(a)(3); the number of existing and potential future units in the condominium, *see* N.C.G.S. § 47C-2-105(a)(4); the boundaries and identifying numbers of each unit, *see* N.C.G.S. § 47C-2-105(a)(5); a list of common elements and areas, *see* N.C.G.S. § 47C-2-105(a)(6); a description of reserved development and declarant rights, *see*

N.C.G.S. § 47C-2-105(a)(8); an allocation to each unit of interests in the common areas, as well as allocations of common expenses and voting rights, *see* N.C.G.S. § 47C-2-105(a)(11), N.C. Gen. Stat. § 47C-2-107 (2005); restrictions on the use, alienation, and occupancy of the units, *see* N.C.G.S. § 47C-2-105(a)(12); a recitation of easements and licenses affecting the property, *see* N.C.G.S. § 47C-2-105(a)(13); and the condominium plat, *see* N.C. Gen. Stat. § 47C-2-109 (2005). In addition to these mandatory requirements, the Declaration also includes a number of nonmandatory sections contemplated by the Act, including: rules regarding unit additions, alterations, and improvements, *see* N.C. Gen. Stat. § 47C-2-111 (2005); rules regarding the relocation of boundaries between units, *see* N.C. Gen. Stat. § 47C-2-112 (2005); rules for amending the Declaration and bylaws, *see* N.C. Gen. Stat. § 47C-2-117 (2005), N.C. Gen. Stat. § 47C-3-106 (2005); procedures for terminating the condominium, *see* N.C. Gen. Stat. § 47C-2-118 (2005); provisions regarding the structure of the condominium association and executive board, *see* N.C. Gen. Stat. §§ 47C-3-101, -102, -103 (2005); provisions for an initial period of declarant control over the condominium association, *see* N.C. Gen. Stat. § 47C-3-103(d) (2005); provisions regarding upkeep and damages, *see* N.C. Gen. Stat. § 47C-3-107 (2005); provisions regarding insurance, *see* N.C. Gen. Stat. § 47C-3-113 (2005); provisions regarding assessments for common expenses, *see* N.C. Gen. Stat. § 47C-3-115 (2005); and provisions for levying against units for unpaid assessments, *see* N.C. Gen. Stat. § 47C-3-116 (2005). It is clear from our review of the Declaration that the Declaration "essentially, in the main, [and] for the most part, satisfies the [Act's requirements]." *Burnette*, 297 N.C. at 532, 256 S.E.2d at 393.

Plaintiffs also argue that the omission of the development time limit was a nonmaterial omission. We agree. There is no evidence in the record that the timing of the construction of Building Two was a disputed issue at any time during the business relationship of Plaintiff and Defendants. Rather, the evidence clearly demonstrates that both parties contemplated and expected that Plaintiff would construct Building Two at an unspecified future time. Plaintiff purchased the property with the intent to construct two condominium buildings thereon. Plaintiff communicated its plan to Defendants. Defendants were actively involved in negotiating and preparing the Declaration and plat. During such negotiations, Defendants made numerous demands of Plaintiff. Some of these demands contemplated the future existence of Building Two, but none of the demands involved the tim-

**IN RE WILLIAMSON VILLAGE CONDOS.**

[187 N.C. App. 553 (2007)]

ing of construction of Building Two. Defendants approved the final plat, which outlined the future site of Building Two. The final Declaration contained a section reserving Plaintiff's future development rights, but it did not set out a time limit for the exercise of those rights. Plaintiff suggests that the parties purposely omitted the timing clause in order to grant Plaintiff flexibility in determining the most opportune time to begin construction on Building Two. Defendants do not dispute this contention. Defendants approved the Declaration with the time limit omitted, and never expressed any concern over construction timing until more than five years after they approved the plat and Declaration.

In sum, other than the omission of a time limit for the exercise of reserved development rights, it appears that the Declaration contains every other relevant component either mandated by the Act or considered to be material by the parties.

C.

Defendants do not argue that Plaintiff failed to substantially comply with the Act. Rather, Defendants contend that the · General Assembly did not intend for the Act's "substantial compliance" clause to apply to omissions of development time limits. Defendants point to the mandatory language of N.C.G.S. § 47C-2-105(a)(8), which states that "[t]he declaration for a condominium *must* contain . . . a time limit within which [development] rights must be exercised" (emphasis added). According to Defendants, the General Assembly's use of the word "must" demonstrates the General Assembly's clear and unambiguous intent to make a development time limit a requisite part of a condominium declaration, notwithstanding the Act's "substantial compliance" clause.

In support of this argument, Defendants rely on a case from the Colorado Court of Appeals. In *Silverview v. Overlook at Mt. Crested Butte*, 97 P.3d 252 (Colo. Ct. App. 2004), the Colorado court considered a similar argument regarding the Colorado Common Interest Ownership Act, Colo. Rev. Stat. § 38-33.3-101 et seq. Using language almost identical to N.C.G.S. § 47C-2-105(a)(8), the Colorado statute required that a condominium declaration "*must* contain . . . [a] description of any development rights . . . reserved by the declarant . . . and the time limit within which each of those rights must be exercised." *Silverview*, 97 P.3d at 255 (emphasis in original) (quoting Colo. Rev. Stat. § 38-33.3-205(1)(h) (2003)). The appellant's declaration failed to include a development time limit, and the trial court

held that the omission rendered the appellant's development rights void *ab initio. Id.* at 254-55. On appeal, the appellant argued that the omission did not void its development rights. The appellant pointed to another portion of the statute which declared that "[t]itle to a [condominium] is not rendered unmarketable or otherwise affected by reason of an insubstantial failure of the declaration to comply with this article." *Id.* at 255-56 (quoting Colo. Rev. Stat. § 38-33.3-203(4) (2003)). The appellate court disagreed. It found that C.R.S. § 33.3-203(4), by its terms, only applied to disputes concerning title and marketability. Therefore, it was inapplicable because it neither addressed nor excused noncompliance with the statute's development rights provisions. *Id.* at 256. Since the noncompliance provision did not apply, the mandatory language of the statute "unambiguously require[d] any reservation of development rights to include a 'time limit within which each of those rights must be exercised.' " *Id.* at 255 (quoting C.R.S. § 38-33.3-205(1)(h)).

In the case before us, Defendants' reliance on *Silverview* is unavailing. As the Colorado court noted, the noncompliance clause in C.R.S. § 38-33.3-203(4) did not apply to omissions of development rights time limits. Rather, it only applied to instances of statutory noncompliance that implicated title and marketability. *Compare* N.C. Gen. Stat. § 47C-2-103(d) (2005) (containing language identical to C.R.S. § 38-33.3-203(4)). In contrast, N.C.G.S. § 47C-1-104(c) forecloses *any* cause of action that might arise solely due to nonmaterial noncompliance with the Act. It therefore reaches to areas where the Colorado statute did not, including the declaration content requirements set out in N.C.G.S. § 47C-2-105.

Defendants maintain, however, that because the General Assembly used the mandatory language "must contain" in N.C.G.S. § 47C-2-105(a), it clearly did not intend for the "substantial compliance" clause in N.C.G.S. § 47C-1-104(c) to apply to that portion of the Act. We disagree. In *Johnson v. Manning*, 63 N.C. App. 673, 306 S.E.2d 137 (1983), our Court considered whether the contents of a certain business document were sufficient to meet the statutory requirements for a limited partnership agreement. The controlling statute at the time required that "[t]wo or more persons desiring to form a limited partnership *shall* . . . [s]ign and swear to a certificate, which *shall* state" a number of items, including the name, location, character, and financial arrangement of the partnership. N.C. Gen. Stat. § 59-2(a)(1) (1982) (emphasis added), *repealed by* 1985 N.C. Sess. Laws ch. 989, § 2. The statute also required the partnership to

file the agreement with the register of deeds in the county where the partnership had its principal place of business. N.C.G.S. § 59-2(a)(2). The purported partnership agreement failed to include some of the requirements of N.C.G.S. § 59-2(a)(1), and the partners had not filed the agreement as required by N.C.G.S. § 59-2(a)(2). *Johnson*, 63 N.C. App. at 676, 306 S.E.2d at 139. However, the statute excused minor violations of its requirements, declaring that "[a] limited partnership is formed if there has been substantial compliance in good faith with the requirements of [the statute]." N.C. Gen. Stat. § 59-2(b) (1982), *repealed by* 1985 N.C. Sess. Laws ch. 989, § 2. Our Court held that despite the shortcomings in the purported partnership agreement, it satisfied enough of the requirements of N.C.G.S. § 59-2(a) to raise a question of fact as to whether the parties had substantially complied with the statute. *Johnson*, 63 N.C. App. at 676-77, 306 S.E.2d at 139.

Our holding in *Johnson* was predicated upon a recognition that even where the General Assembly uses mandatory language such as "shall" or "must," it may still excuse noncompliance with the use of a "substantial compliance" clause. We therefore find that if the General Assembly did not intend for the "substantial compliance" clause in N.C.G.S. § 47C-1-104(c) to apply to the declaration content requirements of N.C.G.S. § 47C-2-105, it would have excluded that section from its reach. Plaintiff may properly rely on the Act's "substantial compliance" clause to excuse the omission of a development time limit in the Declaration.

D.

The ultimate question, then, is whether Plaintiff substantially complied with all material portions of the Act. We find that Plaintiff's evidence on substantial compliance set out in Part B above "so clearly establishes the fact in issue that no reasonable inferences to the contrary may be drawn." *Burnette*, 297 N.C. at 533, 256 S.E.2d at 393. We therefore hold that Plaintiff has substantially complied with all material portions of the Act as a matter of law. *See id.* at 529-33, 256 S.E.2d at 391-93 (holding that the plaintiff had substantially complied as a matter of law with statutory requirements for public sales of collateral securing unpaid debts). The Act thus prevents Defendants from raising their objection in response to Plaintiff's request for a declaratory judgment regarding its development rights.

We recognize that omission of a development time limit may preclude a finding of substantial compliance in cases where the timing of future construction is a material factor in a condominium project. On

the record before us, however, this case does not present such a situation. We reverse the trial court's grant of summary judgment in favor of Defendants, and remand with instructions for the trial court to enter summary judgment in favor of Plaintiff.

In light of the foregoing, we do not address Plaintiff's remaining assignments of error.

Reversed and remanded.

Judge ELMORE concurs.

Judge TYSON dissents with a separate opinion.

TYSON, Judge dissenting.

The majority's opinion holds plaintiff "substantially complied" with the North Carolina Condominium Act ("the Act") notwithstanding plaintiff's failure to include in the declaration, a mandatory "time limit within which each of [the development] rights must be exercised . . ." as required by N.C. Gen. Stat. § 47C-2-105(a)(8). I disagree and vote to affirm the trial court's decision granting summary judgment in favor of defendants. I respectfully dissent.

## I.  Standard of Review

"A question of statutory interpretation is ultimately a question of law for the courts." *Brown v. Flowe*, 349 N.C. 520, 523, 507 S.E.2d 894, 896 (1998). This Court reviews the interpretation of a statute *de novo. Oxendine v. TWL, Inc.*, 184 N.C. App. 162, 164, 645 S.E.2d 864, 865 (2007).

## II.  Substantial Compliance

Plaintiff argues the failure to include a time limitation for development rights in the declaration was a nonmaterial omission and it therefore "substantially complied" with the Act. I disagree.

### A.  North Carolina Law

The General Assembly enacted the North Carolina Condominium Act based upon the Uniform Condominium Act of 1980. According to the official commentary to the Act, the statutory provision at issue is not "significantly different" from the Uniform Act.

N.C. Gen. Stat. § 47C-2-105 (2005) provides, in relevant part:

**IN RE WILLIAMSON VILLAGE CONDOS.**

[187 N.C. App. 553 (2007)]

(a) The declaration for a condominium *must contain*:

. . . .

(8) A description of any development rights and other special declarant rights reserved by the declarant, together with a legally sufficient description of the real estate to which each of those rights applies, and *a time limit within which each of those rights must be exercised.*

(Emphasis supplied). Official Comment 9 to N.C. Gen. Stat. § 47C-2-105 states, "[p]aragraph (a)(8) *requires* the declaration to describe all development rights and other special declarant rights which the declarant reserves. The declaration *must* describe the real estate to which each right applies, and *state the time limit within which each of those rights must be exercised.*" (Emphasis supplied).

The word "must" is synonymous with "shall." *Internet East, Inc. v. Duro Communications, Inc.*, 146 N.C. App. 401, 405-06, 553 S.E.2d 84, 87 (2001). This Court has stated, "[t]he word 'shall' *is defined as 'must'* or 'used in laws, regulations, or directives to express what is mandatory.'" Id. (citation and quotation omitted) (emphasis supplied). The majority's opinion correctly states that delineation of a time limit in N.C. Gen. Stat. § 47C-2-105(a)(8) is a mandatory requirement, but holds, despite the plain language and legislative intent of the statute, that plaintiff has substantially complied with the Act pursuant to N.C. Gen. Stat. § 47C-1-104(c) (2005).

N.C. Gen. Stat. § 47C-1-104(c) states, "[i]f a declarant, in good faith, has attempted to comply with the requirements of this chapter and has substantially complied with the chapter, *nonmaterial errors or omissions* shall not be actionable." (Emphasis supplied). The threshold issue presented is whether the omission of the statutorily required express time limit for future development is nonmaterial. The majority's opinion states plaintiff has substantially complied with the Act because "the Declaration contains every other relevant component either mandated by the Act or considered to be material by the parties." I disagree.

### B. *Silverview v. Overlook at Mt. Crested Butte*

This appears to be an issue of first impression in North Carolina. In the absence of controlling authority, we must look to other jurisdictions to review this issue. I find the reasoning and holding in *Silverview v. Overlook at Mt. Crested Butte* to be directly on

**IN RE WILLIAMSON VILLAGE CONDOS.**

[187 N.C. App. 553 (2007)]

point and persuasive. 97 P.3d 252 (Colo. App. 2004), *cert. denied,* No. 04SC179, 2004 WL 1813925, at *1 (Colo., Aug. 16, 2004). In *Silverview,* the Colorado Court of Appeals held, based on the language of Colo. Rev. Stat. § 38-33.3-205 (2003), that the omission of a time limitation on the development rights in the declaration rendered the rights void *ab initio.* In virtually identical language to N.C. Gen. Stat. § 47C-2-105(a)(8), Colo. Rev. Stat. § 38-33.3-205(1)(h) states:

(1) The declaration must contain:

. . . .

(h) A description of any development rights and other special declarant rights reserved by the declarant, together with a description sufficient to identify the real estate to which each of those rights applies and *the time limit within which each of those rights must be exercised.*

(Emphasis supplied).

In *Silverview,* the Court stated, "the word 'must' connotes a requirement that is mandatory and not subject to equivocation. Thus, in using the word 'must,' the plain language of [Colo. Rev. Stat.] § 38-33.3-205(1)(h) unambiguously requires any reservation of development rights to include a 'time limit within which each of those rights must be exercised.'" 97 P.3d at 255.

The Colorado General Assembly also enacted a statute with language that is similar to N.C. Gen. Stat. § 47C-1-104(c). Colo. Rev. Stat. § 38-33.3-203(4) (2003) states, "[t]itle to a unit and common elements is not rendered unmarketable or otherwise affected by reason of an *insubstantial failure* of the declaration to comply with this article. Whether a substantial failure impairs marketability is not affected by this article." (Emphasis supplied). The majority's opinion correctly states the Colorado Court of Appeals found the statute's noncompliance provision inapplicable because the dispute did not concern title or marketability. *Id.* at 256. However, the Court subsequently states, "even assuming [the noncompliance provision] were to apply, we find Overlook's argument unpersuasive." *Id.*

The Colorado Court of Appeals held that examples of insubstantial defects included omitting the words " 'condominium,' 'cooperative,' or 'planned community' " from the declaration or the failure to include "the plats or plans to comply satisfactorily with the requirement that they be clear and legible." *Id.* The Court further stated,

**IN RE WILLIAMSON VILLAGE CONDOS.**

[187 N.C. App. 553 (2007)]

*"Overlook's mathematical argument that missing only one out of twenty-three requirements must necessarily be an 'insubstantial failure' is overly simplistic. . . .* we [do not] believe that the General Assembly intended an omission that leads to development rights being reserved with no time limitation to be considered insubstantial." *Id.* (emphasis supplied).

The Colorado Court of Appeals relied on two subsections as the basis of its holding:

(2) . . . This provision does not extend the time limit on the exercise of development rights imposed by the declaration pursuant to section 38-33.3-205(1)(h).

. . . .

(5) If a declarant fails to exercise any development right within the time limit and in accordance with any conditions or fixed limitations described in the declaration pursuant to section 38-33.3-205(1)(h), or records an instrument surrendering a development right, that development right shall lapse . . . .

Colo. Rev. Stat. § 38-33.3-210 (2) and (5) (2003). The Court concluded "[t]hese subsections are consistent with the conclusion that the omission of a time limitation is not 'insubstantial'." *Id.*

### C. Analysis

The North Carolina and Colorado General Assemblies enacted virtually identical provisions regarding the mandatory requirements the declarant must comply with in order to reserve future development rights. Although Colorado law is not binding on North Carolina, I find the Colorado Court of Appeals' analysis of virtually identical statutes to be directly on point and persuasive to the facts and legal issue before us.

N.C. Gen. Stat. § 47C-2-110 (2005) is a very similar provision to Colo. Rev. Stat. § 38-33.3-210(2). N.C. Gen. Stat. § 47C-2-110(b) expressly limits future development rights by stating:

Development rights may be reserved within any real estate added to the condominium if the amendment adding that real estate includes all matters required by, and is in compliance with, G.S. 47C-2-105 and, if a leasehold condominium, G.S. 47C-2-106 and also if the plats and plans include all matters required by G.S. 47C-2-109. *This provision does not extend the limit on the exer-*

*cise of developmental rights imposed by the declaration pursuant to G.S. 47C-2-105(a)(8).*

(Emphasis supplied). Further, Official Comment 1 to N.C. Gen. Stat. § 47C-2-110 states:

This section generally describes the method by which any development right may be exercised. Importantly, while new development rights may be reserved within new real estate which is added to the condominium, *the original time limits on the exercise of these rights which the declarant must include in the original declaration may not be extended.* Thus, the development process *may continue only within the self-determined constraints originally described by the declarant.*

(Emphasis supplied).

Although the North Carolina Condominium Act does not have a provision identical to Colo. Rev. Stat. § 38-33.3-210(5), stating failure to exercise the development right within the prescribed time causes the development rights to lapse, I find the addition of the subsection and Official Comment above to be indicative of the General Assembly's intent to require inclusion of a time limitation for future development rights a mandatory and material part of the declaration. The majority's reliance upon N.C. Gen. Stat. § 47C-1-104(c) to excuse the omission is misplaced. This statute expressly applies to only "nonmaterial errors or omissions" and is inapplicable in this case.

Further, the majority's holding excusing plaintiff's omission on the ground that plaintiff otherwise substantially complied with the Act because "the Declaration contains every other relevant component either mandated by the Act or considered to be material by the parties" was expressly disavowed by the Colorado Court of Appeals.

The General Assembly's intended purpose in enacting N.C. Gen. Stat. § 47C-2-105(a)(8) was for the declarant to fully disclose to and inform the buyer, upon purchase, of any future development rights the declarant maintains over the property and the timing in which those rights must be exercised. The buyer can then decide whether to purchase the property based on the present conditions and the disclosed conditions which may exist at a specified time in the future. Based upon the plain and mandatory language of the statute, N.C. Gen. Stat. § 47C-1-104 should not be used to grant plaintiff future development rights it did not expressly reserve to exercise within a stated time period.

### III. Conclusion

N.C. Gen. Stat. § 47C-2-105(a)(8) expressly and mandatorily requires the declaration of condominium to include a time limit within which future development rights must be exercised. The failure to include this time limitation is a material omission, which renders the development rights *void ab initio*.

The substantial compliance provision of N.C. Gen. Stat. § 47C-1-104(c) is inapplicable to this mandatory and material provision of the Act. The trial court correctly granted summary judgment in favor of defendants and its order should be affirmed. I respectfully dissent.