IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA15-810

Filed: 5 April 2016

Mecklenburg County, No. 12 CVS 22411

IN RE SKYBRIDGE TERRACE, LLC LITIGATION

Appeal by defendants from order and judgment entered 25 March 2015 by Judge James L. Gale in Mecklenburg County Superior Court. Heard in the Court of Appeals 27 January 2016.

> *Randolph M. James, P.C., by Randolph M. James for plaintiff-appellee Skybridge Terrace, LLC.*
>
> *Horack Talley Pharr & Lowndes, P.A., by Amy P. Hunt, for defendant Doyle Christopher Stone.*
>
> *Erwin, Bishop, Capitano & Moss, PA, by Fenton T. Erwin, Jr. and Matthew M. Holtgrewe, for defendants-appellants.*

DAVIS, Judge.

Christopher M. Allen and Harold K. Sublett, Jr. (collectively "Defendants") appeal from the trial court's 25 March 2015 order and judgment granting summary judgment in favor of Skybridge Terrace, LLC ("Skybridge") on its claim seeking a declaratory judgment that it was entitled to withdraw certain property from Skybridge Terrace Condominiums ("the Condominium") in its capacity as the declarant. After careful review, we affirm the trial court's order and judgment.

**Factual Background**

Skybridge is a North Carolina limited liability company that was created to facilitate the development of a condominium complex on Calvert Street in Charlotte, North Carolina. Skybridge issued a public offering statement in September 2006 describing the planned features of the anticipated condominium complex. On 23 July 2008, Skybridge legally created the Condominium by recording the Declaration of Skybridge Terrace Condominiums ("the Declaration") in the Mecklenburg County Registry in Book 23980, Page 818 pursuant to N.C. Gen. Stat. § 47C-2-101 of the North Carolina Condominium Act ("the Condominium Act"). The Declaration submitted the property described therein to the provisions of the Condominium Act and incorporated a plat map illustrating the plans for the Condominium. In the Declaration, Skybridge reserved certain development rights and other special declarant rights, including the right

> to complete the improvements indicated on the Plans; to maintain sales offices, models and signs advertising the Condominium on the Property; to exercise any development right as defined in Section 47C-2-110 of the Act; to use easements over the Common Elements; to elect, appoint or remove members of the Board during the Declarant Control Period; to make the Condominium part of a larger condominium; and *to withdraw any portion of the Property from the Condominium*; and to add property to the Condominium, including but not limited to one additional phase, which is shown on the Plat as Phase Three. . . .

(Emphasis added.)

The Declaration stated that the Condominium would be divided into two phases and include 96 separately owned units. It further provided that "[e]ach phase shall contain 48 units and the phases are designated as Phase One and Phase Two, sometimes alternatively referred to as Phase I and Phase II. Phase I has been built and Phase II is planned but not yet built."

Skybridge began conveying units in Phase I of the Condominium to purchasers in 2009. Defendants purchased their respective units in Phase I in early 2011. Phase II of the Condominium has never been developed.

On 31 December 2012, Skybridge filed a complaint in Mecklenburg County Superior Court against Defendants, Sean M. Phelan ("Phelan"), Nexsen Pruet, PLLC ("Nexsen Pruet"), and various other unit owners of the Condominium. Skybridge's complaint asserted professional malpractice and constructive fraud claims against Phelan and Nexsen Pruet with regard to their representation of Skybridge during the development of the Condominium and their drafting of the Declaration.[1] In their claims against Defendants and the other unit owners, Skybridge sought (1) reformation of the Declaration so that it had the right of either developing or withdrawing the property encompassing Phase II of the Condominium; and (2) in the alternative, a declaratory judgment that Skybridge "has the right to develop and right to withdraw Phase II." The matter was designated a mandatory complex business

---

[1] The claims against Phelan and Nexsen Pruet are not at issue in the present appeal.

case on 1 February 2013 and was subsequently assigned to the Honorable James L. Gale in the North Carolina Business Court.

Skybridge filed an amended complaint on 19 February 2013. On 25 October 2013, Defendants filed an answer, asserting that they "presently own and possess indefeasible property rights in and to the real estate described in Phase II on the plat" and that Skybridge was not entitled to its requested declaratory relief in its amended complaint. On 16 December 2013, Judge Gale entered an order severing Skybridge's claims against Phelan and Nexsen Pruet from its claims against the defendant unit owners pursuant to Rule 42 of the North Carolina Rules of Civil Procedure. The order further provided that the "claims against Nexsen Pruet and Sean Phelan are stayed and held in abeyance until the earlier of January 1, 2015 or resolution of [Skybridge's] claims against the remaining Defendants."

On 11 March 2014, Defendants filed a motion seeking summary judgment in their favor on Skybridge's claims. Skybridge filed a cross-motion for summary judgment on 12 March 2014. The trial court granted summary judgment in favor of Skybridge by order entered 25 March 2015. In its order, the trial court determined that Skybridge "properly reserved a right to withdraw the Phase II parcel from Skybridge Terrace Condominiums[.]" The trial court certified its order pursuant to Rule 54(b) as a final judgment as to all claims between Skybridge and the unit owner defendants. Defendants gave timely notice of appeal to this Court.

## Analysis

The entry of summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.R. Civ. P. 56(c). We review an order granting summary judgment *de novo. Residences at Biltmore Condo. Owners' Ass'n, Inc. v. Power Dev., LLC,* ___ N.C. App. ___, 778 S.E.2d 467, 470 (2015).

Here, Defendants argue that the trial court erred in granting summary judgment in favor of Skybridge on its declaratory judgment claim because Skybridge failed to adequately reserve in the Declaration the right to withdraw Phase II from the Condominium. Defendants further contend that even if the right to withdraw property was adequately reserved in the Declaration, Skybridge was precluded from exercising withdrawal rights after it began conveying units in Phase I to purchasers.

The Condominium Act, codified in Chapter 47C of our General Statutes, "applies to all condominiums created within this State after October 1, 1986." N.C. Gen. Stat. § 47C-1-102(a) (2015). The Condominium Act allows a declarant to reserve certain development rights in the condominium if such a reservation is contained in the declaration creating the condominium. N.C. Gen. Stat. § 47C-2-105(8) (2015). "Development rights" are statutorily defined by the Condominium Act as encompassing "any right or combination of rights reserved by a declarant in the

declaration to add real estate to a condominium; to create units, common elements, or limited common elements within a condominium; to subdivide units or convert units into common elements; or *to withdraw real estate from a condominium*." N.C. Gen. Stat. § 47C-1-103(11) (2015) (emphasis added).

In order to properly reserve development rights, "a declarant must specifically state in the declaration the rights it wishes to retain 'together with a legally sufficient description of the real estate to which each of those rights applies, and a time limit within which each of those rights must be exercised.'" *Residences at Biltmore Condo. Owners' Ass'n*, ___ N.C. App. at ___, 778 S.E.2d at 472 (quoting N.C. Gen. Stat. § 47C-2-105(8)). With regard to the exercise of the development right of withdrawal, the Condominium Act expressly contemplates both the reservation of *all* of the real estate comprising the condominium and the reservation of *less than all* of said real estate, stating as follows:

> If the declaration provides pursuant to G.S. 47C-2-105(a)(8) that all or a portion of the real estate is subject to the development right of withdrawal:
>
> (1) If all the real estate is subject to withdrawal, and the declaration does not describe separate portions of real estate subject to that right, no part of the real estate may be withdrawn after a unit has been conveyed to a purchaser; and
>
> (2) If a portion or portions are subject to withdrawal, no part of a portion may be withdrawn after a unit in that portion has been conveyed to a purchaser.

N.C. Gen. Stat. § 47C-2-110(d) (2015).

In the present case, the Declaration provided that Skybridge, as the declarant, retained the right "to withdraw *any portion* of the Property from the Condominium." (Emphasis added.) Defendants contend that the use of the term "any portion" (1) failed to sufficiently describe the real estate to which the right of withdrawal was meant to apply; and (2) should be interpreted as meaning that "the Declaration reserve[d] the right to withdraw *all* Property from the Condominium." (Emphasis added.) We are not persuaded by either of these assertions.

Under the Condominium Act, the plat showing the plans for the condominium "shall be considered a part of the declaration[.]" N.C. Gen. Stat. § 47C-2-109(a) (2015). In this case, the recorded plat shows separate and distinct phases of development of the Condominium: Phase I, Phase II, and Phase III. Phases I and II are illustrated on the plat, and as the trial court noted in its summary judgment order, there is "a surveyed line of demarcation between them."[2] Phase III is depicted using a dotted line and was labeled "NEED NOT BE BUILT." The boundaries of each phase are clearly depicted on the plat.

Thus, the surveyed boundaries set forth on the plat provide a legally sufficient description of the real estate included in each phase of the Condominium. Because,

---

[2] Phase III was not actually part of the Condominium property but was depicted on the plat as property that could later be added to the Condominium.

however, both the Declaration and the Condominium Act utilize the term "portion" rather than "phase" in discussing the right to withdraw, we must determine whether the two terms — as used here — are synonymous.

On this issue, the trial court concluded that Phase II constituted a "portion" of the Condominium such that it could be withdrawn pursuant to Skybridge's right to "withdraw any portion of the Property from the Condominium" as stated in the Declaration. The trial court explained its reasoning as follows:

> {51} The Act does not define "portion" or provide significant guidance on what constitutes a separate "portion" for purposes of reserving a right to withdraw. The undisputed facts of the case at hand, however, make clear that the Phase II parcel was and remains a separate and independent "portion" from Phase I. The recorded plat referenced in the Declaration labels separate phases and contains a surveyed phase line separating the Phase I and Phase II parcels. As noted, the Phase II real estate has a tax parcel identification number separate from Phase I and remains in [Skybridge's] name.
>
> {52} This separate identity was clear at the time the Declaration was recorded and when each Unit Owner Defendant purchased his or her interest in the condominium. Unit Owner Defendants could not reasonably conclude otherwise. They were on notice when they purchased their units that the Phase II real estate was considered a separate portion. . . .

(Internal citations omitted.)

We agree with the trial court's analysis on this issue. The recorded plat for the Condominium showed a condominium complex comprised of two defined parts: Phase

I (which had been built) and Phase II (which was "planned"). The plat also provided for the possibility of adding Phase III, which was not yet part of the Condominium. Thus, because Phase I and Phase II are the only discrete and clearly identifiable "portions" of the Condominium depicted on the plat, Skybridge's right to withdraw "any portion" must be construed as the right to withdraw either Phase I or Phase II.

In a related argument, Defendants contend that Skybridge's reservation of the right to "withdraw any portion of the Property" amounted to a reservation of the right to withdraw *all* of the Condominium property. Based on this contention, they assert that Skybridge was precluded from withdrawing Phase II because it had already conveyed to purchasers units in Phase I. *See* N.C. Gen. Stat. § 47C-2-110(d)(1) ("If all the real estate is subject to withdrawal, and the declaration does not describe separate portions of real estate subject to that right, no part of the real estate may be withdrawn after a unit has been conveyed to a purchaser . . . .").

However, subsection (2) of N.C. Gen. Stat. § 47C-2-110(d) contemplates scenarios where — as here — a declarant reserves the right to withdraw less than all of the condominium property, stating that "[i]f a portion or portions are subject to withdrawal, no part of a portion may be withdrawn after a unit *in that portion* has been conveyed to a purchaser." N.C. Gen. Stat. § 47C-2-110(d)(2) (emphasis added). Thus, N.C. Gen. Stat. § 47C-2-110(d) recognizes the ability of a declarant to reserve

a right of withdrawal as to *either* (1) all of the condominium's real estate; *or* (2) any portion of the condominium's real estate.

Here, the Declaration does not refer to *all* of the Condominium's property in describing the declarant's withdrawal rights. Instead, to the contrary, it describes the right to withdraw any "portion" of the Condominium property. While not defined in the Condominium Act, the term "portion" necessarily means something less than all of the condominium property in its entirety. *See American Heritage Dictionary* 966 (2nd college ed. 1985) (defining "portion" as "[a] section or quantity within a larger thing; a part of a whole"); *see also Martin v. N.C. Dep't of Health & Human Servs.*, 194 N.C. App. 716, 722, 670 S.E.2d 629, 634 ("Where a statute does not define a term, we must rely on the common and ordinary meaning of the word[ ] used."), *disc. review denied*, 363 N.C. 374, 678 S.E.2d 665 (2009).

Thus, under the Act, Skybridge was prohibited from withdrawing the Phase I property because it had already conveyed units in Phase I but was *not* precluded from withdrawing the Phase II property because no units in Phase II had been conveyed. Indeed, no units in Phase II were ever even built. While admittedly an explicit reservation in the Declaration of the right to withdraw "any *phase*" (as opposed to "any *portion*") would have been clearer and more precise, Skybridge's express reservation of the right to withdraw "any portion" provided a legally sufficient

IN RE SKYBRIDGE TERRACE, LLC

*Opinion of the Court*

description of the real estate to which withdrawal rights applied. Defendants' argument on this issue is therefore overruled.

While we have concluded that the identification and demarcation of the separate phases on the plat constituted "a legally sufficient description of the real estate" to which the withdrawal rights applied, N.C. Gen. Stat. § 47C-2-105(a)(8), we agree with Defendants that there are two specific statutory requirements concerning the right of withdrawal with which Skybridge did not comply. First, the plat map does not note Skybridge's reservation of a right to withdraw property as required by N.C. Gen. Stat. § 47C-2-109(b)(3). *See* N.C. Gen. Stat. § 47C-2-109(b)(3) (requiring the recorded plat to show "[t]he location and dimensions of any real estate subject to development rights, labeled to identify the rights applicable to each parcel"). Second, the Declaration does not conform with N.C. Gen. Stat. § 47C-2-105(8) by listing the time limit within which the right to withdraw must be exercised.

Pursuant to N.C. Gen. Stat. § 47C-1-104(c), however, the Condominium Act "excuses nonmaterial noncompliance with [its] requirements where the declarant has substantially complied with the statute." *In re Williamson Vill. Condos.*, 187 N.C. App. 553, 557, 653 S.E.2d 900, 902 (2007), *aff'd per curiam*, 362 N.C. 671, 669 S.E.2d 310 (2008); *see* N.C. Gen. Stat. § 47C-1-104(c) (2015) ("If a declarant, in good faith, has attempted to comply with the requirements of this chapter and has substantially complied with the chapter, nonmaterial errors or omissions shall not be actionable.").

Thus, in order to show its entitlement to summary judgment on its claim seeking declaratory relief, Skybridge was required to show that (1) it in good faith attempted to comply with the Condominium Act; (2) it did, in fact, substantially comply with the requirements contained therein; and (3) its errors or omissions were nonmaterial. *See Williamson Vill. Condos.*, 187 N.C. App. at 557, 653 S.E.2d at 902. Here, Defendants do not affirmatively argue that Skybridge acted in bad faith. Rather, they challenge the trial court's determinations that (1) Skybridge substantially complied with the Condominium Act; and (2) Skybridge's omissions were nonmaterial.

Our Court applied N.C. Gen. Stat. § 47C-1-104(c) in *Williamson Village Condominiums*. We explained that substantial compliance with the Condominium Act means "compliance which substantially, essentially, in the main, or for the most part, satisfies the statute's requirements." *Id.* (citation, quotation marks, and brackets omitted). In that case, the issue was whether the declarant had sufficiently reserved development rights in a condominium despite its failure to include a time limit on its right to further develop the property. *Id.* at 556-57, 653 S.E.2d at 901-02. In determining whether the declarant had substantially complied with the Condominium Act, we observed that "[t]he Act contains numerous requirements for condominium creation and operation" and that "[m]any of the Act's requirements, both in N.C.G.S. § 47C-2-105 and elsewhere, deal with the contents of a condominium

declaration." *Id.* at 557, 653 S.E.2d at 902. We then compared the contents of the declaration at issue with the mandatory provisions of the Condominium Act along with a number of the nonmandatory sections. *Id.* at 557-58, 653 S.E.2d at 902-03. We concluded that the declaration "essentially, in the main, and for the most part, satisfie[d] the Act's requirements." *Id.* at 558, 653 S.E.2d at 903 (citation, quotation marks, and brackets omitted).

In the present case, the trial court relied on our analysis in *Williamson Village Condominiums* and engaged in a similar analysis, correctly stating the following:

> {63} The Declaration, "for the most part, satisfies the [Act's requirements]." *Id.* at 557, 653 S.E.2d at 902 (quoting *N.C. Nat'l Bank v. Burnette*, 297 N.C. 524, 532, 256 S.E.2d 388, 393 (1979)). The Declaration is a forty-six-page document that includes the following: (1) the name of the condominium complex and condominium association, in compliance with section 47C-2-105(a)(1) of the Act; (2) the name of the county in which the real estate is located, in compliance with section 47C-2-105(a)(2) of the Act; (3) an adequate description of the real estate within the condominium, in accordance with section 47C-2-105(a)(3) of the Act; (4) the number of existing and potential future units in the condominium, pursuant to section 47C-2-105(a)(4) of the Act; (5) the boundaries and identifying number of each unit, in compliance with section 47C-2-105(a)(5) of the Act; (6) a description of limited common elements and areas, as required under section 47C-2-105(a)(6) of the Act; (7) a description of reserved development and declarant rights, including an explanation of which fixed portions are subject to those rights, in accordance with section 47C-2-105(a)(8) of the Act; (8) allocations for interests in the common elements, liability for common expenses, and voting rights, as required under sections 47C-2-105(a)(11) and -107 of the

Act; (9) restrictions on the use and occupancy of the units, pursuant to section 47C-2-105(a)(12) of the Act; (10) a recitation of easements and licenses affecting the condominium, in compliance with section 47C-2-105(a)(13) of the Act; and (11) plans and a plat for the condominium, as required under section 47C-2-109. *See In re Williamson Vill. Condos.*, 187 N.C. App. at 557-58, 653 S.E.2d at 902-03 (noting declaration at issue complied with each of these provisions).

{64} The Declaration also includes the following nonmandatory information: (1) rules regarding unit additions, alterations, and improvements, pursuant to section 47C-2-111 of the Act; (2) rules for amending the Declaration and bylaws, as provided under sections 47C-2-117 and 3-106 of the Act; (3) procedures for terminating the condominium, as delineated in section 47C-2-118 of the Act; (4) provisions regarding the condominium association and executive board, in accordance with sections 47C-2-101, -102, and -103 of the Act; (5) provisions governing an initial period of declarant control over the condominium association, as contemplated in section 47C-3-103(d) of the Act; (6) terms regarding upkeep and damages, pursuant to section 47C-3-107 of the Act; (7) provisions regarding insurance, as provided under section 47C-3-113 of the Act; (8) provisions regarding assessments for common expenses, as contemplated in section 47C-3-115 of the Act; and (9) provisions for levying against units for unpaid assessments, in accordance with section 47C-3-116 of the Act. *See id.* at 558, 653 S.E.2d at 903 (noting the declaration at issue complied with each of these nonmandatory provisions).

Once again, we agree with the trial court's analysis. The Declaration here is comprehensive and demonstrates Skybridge's substantial compliance with the Condominium Act. However, we must still determine whether Skybridge's (1) failure

to include on the plat its reservation of withdrawal rights; and (2) omission in the Declaration of the time limit for the exercise of these rights, were material.

The official comment to N.C. Gen. Stat. § 47C-2-109 sheds light on the underlying purpose of the requirement in subsection (b)(3) that the reserved development rights be described on the plat, stating that "[s]ince different portions of the real estate may be subject to differing development rights — for example, only a portion of the total real estate may be added as well as withdrawn from the project — the plat must identify the rights applicable to each portion of that real estate." *Id.* cmt. 5.

Here, the concern identified in the official comment as the rationale behind subsection (b)(3) is not implicated because both of the only two existing phases of the Condominium were subject to the same right of withdrawal at the time the Declaration was recorded. The only other development right reserved by Skybridge in the Declaration was to add property to the Condominium, including a possible Phase III. However, the fact that Phase III was not presently part of the Condominium was identified on the plat by the hard line of demarcation and the label "NEED NOT BE BUILT." Thus, because the same right of withdrawal applied to each of the two phases of the property that were actually part of the Condominium, we are unable to conclude that the failure to explicitly state this on the plat was a material omission.

We reach the same result regarding the omission from the Declaration of a time limit within which the right to withdraw could be exercised that this Court addressed in *Williamson Village Condominium*. In holding that the omission of a time limit on the declarant's reserved development right was not material in that case, this Court examined the evidence of record and concluded that there was "no evidence in the record that the timing of the construction of Building Two was a disputed issue at any time during the business relationship of Plaintiff and Defendants." *Williamson Vill. Condos.*, 187 N.C. App. at 558, 653 S.E.2d at 903.

Likewise, here — as the trial court noted — Defendants "purchased units in Skybridge Terrace without regard to the omission of the time limit in the Declaration[.]" The trial court properly based this conclusion on the fact that Defendants "failed to present or forecast evidence that any of the current unit owners disputed or were concerned with the lack of time limit on Declarant's right to withdraw any portion of the condominium."

Finally, Defendants assert that they were misled by the language in the public offering statement providing that "[t]he Declarant has retained no option to withdraw withdrawable real estate from the Condominium." However, this argument fails to take into account the following additional language included in the public offering statement.

> This Public Offering Statement consists of seven (7)
> separate parts, which together constitute the complete

Public Offering Statement. This first part, entitled "Narrative", summarizes the significant features of the Condominium and presents additional information of interest to prospective purchasers. The other seven (7) parts contain respectively: schematic drawings of the Condominium site plan and unit layouts, the form Purchase Agreement for the individual Units (the "Purchase Agreement"), *the current versions of the proposed Declaration for the Condominium*, the Bylaws for the Condominium, (attached as Exhibit B to the Declaration), the Articles of Incorporation for the Condominium Association, and the projected Budget for the first year of operation of the Condominium.

This Narrative is intended to provide only an introduction to the Condominium and not a complete or detailed discussion. Consequently, the other parts of this Public Offering Statement should be reviewed in depth, and *if there should be any inconsistency between information in this part of the Public Offering Statement and information in the other parts, the other parts will govern. . . .*

(Emphasis added.)

Thus, Defendants were on notice from the plain wording of the public offering statement that in the case of any conflict between it and the Declaration, the Declaration would control.[3] Accordingly, we reject Defendants' argument on this issue.

---

[3] The Condominium Act expressly provides that false and misleading statements made in a public offering statement are actionable under N.C. Gen. Stat. § 47C-4-117 and that "any person or class of person adversely affected . . . has a claim for appropriate relief." N.C. Gen. Stat. § 47C-4-117 (2015). Therefore, while a potential remedy exists for misrepresentations contained in a public offering statement, Defendants have not asserted any claim against Skybridge alleging a violation of § 47C-4-117.

## Conclusion

For the reasons stated above, we affirm the trial court's 25 March 2015 order and judgment.

AFFIRMED.

Judges CALABRIA and TYSON concur.