In re Skybridge Terrace, LLC Litig., 2015 NCBC 26.

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
12 CVS 22411

|  |  |
|---|---|
| In re Skybridge Terrace, LLC Litigation | ) ) ) ) ) ) ) |

**ORDER, OPINION & JUDGMENT**

{1}     THIS MATTER is before the Court on cross-motions for summary judgment pursuant to Rule 56 of the North Carolina Rules of Civil Procedure ("Rule(s)").  For the reasons stated below, Plaintiff Skybridge Terrace, LLC's ("Plaintiff," "Skybridge," or "Declarant") motion is GRANTED in part, Defendants Christopher M. Allen ("Allen") and Harold K.  Sublett, Jr.'s ("Sublett") motion is DENIED, and partial final judgment should be entered pursuant to Rule 54(b) as to the claims governed by the cross-motions.

> *Randolph M. James, P.C. by Randolph M. James for Plaintiff.*

> *Erwin, Bishop, Capitano & Moss, P.A. by Fenton T. Erwin, Jr. for Defendants Allen and Sublett.*

Gale, Chief Judge.

## I.  MATTER BEFORE THE COURT AND SUMMARY OF RULING

{2}     Skybridge is the Declarant and developer of Skybridge Terrace Condominiums ("Skybridge Terrace"), initially marketed as a complex to consist of at least two buildings, referred to as Phase I and Phase II, each to have forty-eight units, and to potentially include a Phase III.  Only Phase I units were substantially completed when Skybridge recorded the Declaration of Skybridge Terrace Condominiums ("Declaration").  Skybridge now wishes to withdraw the real estate parcel upon which Phase II units were to be constructed ("Phase II parcel" or "Phase II real estate") from Skybridge Terrace and to convey clear title to that parcel.  It now brings this action for declaratory relief, or alternatively for reformation,

against owners to whom it sold units in Phase I ("Unit Owner Defendants") seeking a declaration of clear title for both itself and Unit Owner Defendants.[1]

{3}   Most Unit Owner Defendants entered a mediated settlement agreement, conditioned on resolution of the title claim in Plaintiff's favor.[2]  Two Unit Owner Defendants, Allen and Sublett, oppose Plaintiff and seek a declaratory judgment that they have an undivided interest in the Phase II real estate that Skybridge cannot divest by withdrawing the Phase II parcel from Skybridge Terrace.

{4}   The Court must now construe the North Carolina Condominium Act ("the Act" or "the North Carolina Act"), many provisions of which have received no prior interpretation by North Carolina courts.  In doing so, the Court is guided by the Act's primary purpose: to protect a condominium unit owner's contractual expectation based on promises made in the declaration that created the condominium.  The Court then must determine whether the Unit Owner Defendants' expectations in the condominium can be declared as a matter of law on the uncontested facts of record.  It concludes that there is no disputed material issue of fact, and those expectations may be declared as a matter of law.

{5}   Allen and Sublett primarily rely on section 47C-2-110(b)(2) of the Act, which provides that "no part of a portion may be withdrawn after a unit in that portion has been conveyed to a purchaser."  The Act does not define "portion."  Allen and Sublett effectively assert that the Phase I real estate and the Phase II parcel were not separate "portions," that Unit Owner Defendants received an interest in the Phase II real estate as a part of the common elements in which they have an interest as Phase I unit owners, and, because of section 47C-2-110(b)(2), such

---

[1] Skybridge's Complaint also included claims against its former counsel, who prepared and recorded the condominium project documents.  Those claims have been severed for separate consideration and are not addressed by this Order, Opinion & Judgment.  The Court is further advised that these claims have been conditionally resolved, subject to a final order resolving claims between Plaintiff and Unit Owner Defendants.  This is, in part, why the Court has determined there is no just reason to delay entering final judgment as to Unit Owner Defendants pursuant to Rule 54(b).
[2] This conditional settlement was also a factor in the Court's determination that final judgment should be entered pursuant to Rule 54(b).

interests cannot be defeated by a subsequent withdrawal of that real estate parcel from Skybridge Terrace.

{6} Allen and Sublett's contentions face two fatal pitfalls. First, their position fails if the Phase II parcel never became a part of Skybridge Terrace in the first instance because the parcel was dedicated to units that were not substantially completed at the time the Declaration was recorded.[3] Second, their position fails even if the Phase II parcel was initially included in Skybridge Terrace, but as a separate "portion," subject to the Declarant's reserved right to withdraw it from Skybridge Terrace.

{7} The uncontested facts demonstrate that Allen and Sublett cannot overcome those pitfalls. Rather, Allen and Sublett's arguments fail as a matter of law.

{8} The Court does not make findings of fact when ruling on a motion for summary judgment. *Hyde Ins. Agency, Inc. v. Dixie Leasing Corp.*, 26 N.C. App. 138, 142, 215 S.E.2d 162, 164–65 (1975). The Court here outlines the uncontested facts to demonstrate the basis for its legal conclusions. The Court examines uncontested facts to determine whether a claim either lacks necessary factual support or is barred. Here, in summary, the controlling uncontested facts established by the record include:

    a. Plaintiff Declarant intended to create a condominium initially consisting of the forty-eight units of Phase I that were substantially complete when the Declaration was filed, to be followed by the construction of forty-eight units on the Phase II real estate.

    b. The description of Skybridge Terrace in the Declaration referred to three separate and distinguishable real estate parcels: Phase I and Phase II real estate, initially included, and Phase III real estate, to be potentially added later. The Declaration and the incorporated survey

---

[3] The Act provides that a declaration may not be recorded unless all structural components and mechanical systems of unit buildings are substantially completed. N.C. Gen. Stat. § 47C-2-101(b) (2014).

plat expressly stated that Phase III need not be built.  No such limitation was stated as to Phase II.  However, no units on the Phase II parcel have ever been substantially completed.

c. Phase I and Phase II were clearly described in the Declaration as separate phases and separate parcels.  Each have separate legal descriptions and tax parcel identification numbers.

d. Because the Declaration did not expressly state that Phase II "need not be built," a reasonable expectation may have been created that the Phase II real estate was, at least initially, a part of Common Elements,[4] conveyed in deeds to Phase I unit owners.  Any such expectation must be limited, however, by Declarant's right to withdraw the Phase II parcel, as clearly provided by the Reservation of Special Declarant Rights stated in the Declaration.[5]

e. Exhibit E to the Declaration allocated percentage ownership interests in the undivided Common Elements only to Phase I owners, with no mechanism for reallocating those percentages upon completion of Phase II units.

f. The Declaration reserved Special Declarant Rights, including the right to withdraw a portion of the condominium's real estate.  The time for exercising the Special Declarant Rights has not expired.

g. No units in Phase II have ever been substantially completed.

h. No units in Phase II have been conveyed.

{9}    These uncontested facts lead to the following legal conclusions:

a. The Declaration created a valid, lawful condominium, consisting of forty-eight units on the Phase I parcel.

---

[4] The Declaration defined "Common Elements" as those portions of the real estate other than the condominium units.

[5] (Pl.'s Br. Supp. Pl.'s Mot. Summ. J. ("Pl. Supp. Br.") Ex. A ("Decl.") § 2.9; *see also* Decl. § 1.18 (defining "Special Declarant Rights").)

b. When the condominium was created, the Phase II real estate constituted part of Skybridge Terrace's Common Elements, subject to Special Declarant Rights.[6]

c. The Phase I real estate and the Phase II real estate were and remain separate "portions" of Skybridge Terrace.

d. Declarant properly reserved a right to withdraw the Phase II parcel, and the time for exercising that right has not expired.

e. Any interest that Phase I unit owners hold in the Phase II real estate as Common Elements was and is subject to Declarant's right to withdraw the Phase II real estate from Skybridge Terrace.

f. Declarant may now withdraw the Phase II parcel and convey clear title to it, free of any claims by any Unit Owner Defendant or successor in title.

g. The Unit Owner Defendants were conveyed clear title to the Phase I units, which title is unaffected by withdrawing the Phase II real estate from Skybridge Terrace.

{10} Accordingly, Defendants' Motion for Summary Judgment should be DENIED. Plaintiff's Motion for Summary Judgment should be GRANTED to the extent it seeks this declaration. It is not necessary to further consider Plaintiff's claim for reformation based on mutual mistake, which should then be DISMISSED. The Court should issue final judgment as to all claims between Plaintiff and Unit Owner Defendants, pursuant to Rule 54(b).[7]

## II. CASE HISTORY

{11} Plaintiff initiated this case on December 31, 2012, bringing two sets of claims. The first set of claims is against Sean M. Phelan and Nexsen Pruet, PLLC

---

[6] As explained below, the Court believes this is the better construction of the Act. Another potential construction is that the Phase II parcel never became a part of the condominium at all.

[7] *See N.C. Farm Bureau Mut. Ins. Co. v. Sadler*, 204 N.C. App. 145, 147, 693 S.E.2d 266, 268 (2010), *rev'd on other grounds*, 365 N.C. 178 (2011) (noting a party may appeal an interlocutory order where trial court enters "final judgment with respect to one or more, but less than all of the parties or claims, and the court certifies the judgment as immediately appealable under Rule 54(b)").

("Attorney Defendants") for professional malpractice and constructive fraud in drafting and recording transactional documents related to Skybridge Terrace. The second set of claims is against Unit Owner Defendants for declaratory judgment to resolve actual or potential ownership disputes, or alternatively, for reformation of the deeds conveyed to Unit Owner Defendants based on mutual mistake.[8]

{12}    The action was designated a complex business case on February 1, 2013, and assigned to the undersigned on February 13, 2013. Between May and August of 2013, owners of all but four units signed a mediated settlement agreement with Plaintiff, subject to resolution of the claims against all Unit Owner Defendants. Defendants Allen and Sublett did not sign the settlement agreement and now seek a declaratory judgment that they own an undivided fractional interest in the Phase II real estate that could not be divested.

{13}    On December 11, 2013, this Court bifurcated Plaintiff's claims against Attorney Defendants from the claims against Unit Owner Defendants. Litigation regarding claims for constructive fraud and professional negligence against Attorney Defendants have been stayed and, as the Court understands, are subject to a settlement agreement conditioned upon a summary judgment ruling in Plaintiff's favor on the declaratory judgment and reformation claims against Unit Owner Defendants. This Order addresses only the cross-motions for summary judgment regarding the Unit Owner Defendants.

{14}    Plaintiff and Defendants Allen and Sublett filed timely cross-motions for summary judgment, which have been fully briefed and argued. The Court has further considered each of the movants' proposed orders with findings of fact and conclusions of law.

---

[8] There have been various party additions and substitutions because of a number of changes in ownership since the case's initiation. In October 2013, Emma Allen was added to the action after purchasing a unit in June of that year. In May 2014, seven new defendants were added to the action, again due to changes in ownership through foreclosure. One of the seven, Bank of America, N.A., was originally improperly served, but was properly re-served on June 12, 2014. On March 17, 2015, Genella Allen and Nichelle W. Sublett, Christopher Allen's and Harold Sublett's spouses, were added to the action. On their addition to the action, Genella Allen and Nichelle W. Sublett joined in their spouses' responsive pleading.

{15}    All interested parties have been joined to this lawsuit, and the matter is ripe for disposition.

### III.    STATEMENT OF UNCONTESTED FACTS[9]

{16}    On September 26, 2006, Plaintiff issued a Public Offering Statement for Skybridge Terrace Condominiums ("Public Offering Statement") that included a general description of the condominium as follows:

> The Declarant plans for Phases One and Two of Skybridge Terrace Condominiums to include ninety-six (96) residential condominium units in two buildings located on approximately 1.4 acres of land (the "Property"), which is part of the property more particularly described in Exhibit A of the Declaration of Skybridge Terrace Condominiums. The Declarant may build Phase Three adjacent to Phases One and Two . . . but the Declarant reserves the right not to build Phase Three.

(Mem. Law Supp. Mot. Summ. J. Filed by Harold K. Sublett, Jr. and Christopher M. Allen ("Defs. Supp. Br.") Ex. 5 ("Public Offering Statement") 3.)

{17}    To actually create the condominium complex under the Act, Skybridge needed to record a declaration.[10]  Almost two years after filing its Public Offering Statement, on July 23, 2008, Plaintiff recorded its Declaration in Book 23980, pages 818–75 of the Mecklenburg County Register of Deeds.  Section 2.3 of the Declaration, entitled "Division of Property into Separately Owned Units," provided that the Property[11] was divided into ninety-six units in two phases, with forty-eight units in each Phase I and Phase II and that "Phase I has been built and Phase II is planned but not yet built."  (Pl.'s Br. Supp. Pl.'s Mot. Summ. J. ("Pl. Supp. Br.") Ex. A ("Decl.") § 2.3.)  Throughout the Declaration, Phase I and Phase II are discussed

---

[9] Where legal authority provides context for the facts, the Court has cited to it in footnotes.
[10] *See* N.C. Gen. Stat. § 47C-2-101 cmt. 1 (2014) ("A condominium is created pursuant to this Act only by recording a declaration.").
[11] The Declaration defines "Property" as "[t]he real estate described on Exhibit A, together with all buildings and improvements now or hereafter constructed or located thereon, and all rights, privileges, easements and appurtenances belonging to or in any way pertaining to said real estate." (Decl. § 1.16.)  Exhibit A to the Declaration describes the Property as "Phases I and II shown as part of Tract B2 Skybridge Terrace, LLC on map thereof recorded in Map Book 50, at Page 506 of the Mecklenburg County Public Registry and containing 1.351 acres."  (Decl. Ex. A.)  A portion of this map, which is identical to the plat referenced in the Declaration, is attached to this Order, Opinion & Judgment as Exhibit A.

as separate pieces of real estate. (*See, e.g.*, Decl. § 4.10 ("The Condominium will have 52 parking spaces for Phase One and 52 parking spaces for Phase Two.").)

{18} At the time the Declaration was recorded, units in Phase I were substantially complete, but no units in Phase II were under construction.

{19} The Declaration defined "Common Elements" as "[a]ll portions of the Condominium [created by this Declaration] except the Units." (Decl. §§ 1.5, 1.7.) "Units" are defined as set forth in Exhibit E to the Declaration, which lists the forty-eight units to be included in Phase I. (Decl. § 1.19, Ex. E.) Common Elements and Common Expenses[12] are fully allocated to the Phase I units (Decl. Ex. E), and the Declaration does not provide for subsequent reallocation to any Phase II unit owner.

{20} The Declaration includes a paragraph, entitled "Reservation of Special Declarant Rights," that reserves a right for Plaintiff

> to complete the improvements indicated on the Plans; to maintain sales offices, models and signs advertising the Condominium on the Property; to exercise any development right as defined in Section 47C-2-110 of the Act; to use easements over the Common Elements; to elect, appoint or remove members of the Board during the Declarant Control Period; to make the Condominium part of a larger condominium; and *to withdraw any portion of the Property from the Condominium*; and to add property to the Condominium, including but not limited to one additional phase, which is shown on the Plat as Phase Three.

(Decl. §§ 1.18, 2.9 (emphasis added).)

{21} The language of this reservation of rights conflicts with the earlier Public Offering Statement, which states that "Declarant has retained no option to withdraw withdrawable real estate from the Condominium." (Public Offering Statement 4.) However, the Public Offering Statement expressly provides that, to the extent its information is inconsistent with its attached documents, including the Declaration, "the other parts will govern."[13] (Public Offering Statement 2.)

---

[12] The Declaration defines "Common Expenses" as "[e]xpenditures made or liabilities incurred by or on behalf of the Association, together with any allocations to reserves." (Decl. § 1.6.)

[13] At argument, the Court was made aware that the Declaration attached to the Public Offering Statement differed, in some respects, from the Declaration ultimately recorded two years later. The

{22}     The Declaration references a survey plat that depicts Phases I, II, and III.  A portion of the survey plat is attached to this Opinion as Exhibit A.  (Pl. Supp. Br. Ex. E.)  There is a dashed line of demarcation between the Phase I real estate and Phase II real estate labeled "PHASE LINE."  (Pl. Supp. Br. Ex. E.)  There is a bolder line of demarcation between Phase II and Phase III labeled "NEW PARCEL LINE."  (Pl. Supp. Br. Ex. E.)  Phase I is labeled "FOUNDATION ONLY."  (Pl. Supp. Br. Ex. E.)  Phase II is labeled "PLANNED CONDOMINIUM."  (Pl. Supp. Br. Ex. E.)  Phase III is labeled "NEED NOT BE BUILT."[14]  (Pl. Supp. Br. Ex. E.)  The plat does not show any common amenities or facilities, such as a pool or clubhouse, on the Phase II parcel but does have an area designated for a dumpster on the Phase I parcel.

{23}     Public records show that the Phase II real estate has a tax parcel identification number separate from Phase I and remains in Plaintiff's name.[15]

{24}     The plat contains a certification from a North Carolina licensed land surveyor, but does not include a statement from the surveyor that the plat "accurately depict[s] the legal boundaries and the physical location of the units and other improvements relative to those boundaries."[16]  The plat does not actually delineate units at all.  (Pl. Supp. Br. Ex. E.)  Moreover, the plat does not have a verified statement from a licensed architect or registered engineer.[17]  Plans incorporated in the Declaration provide this information for the Phase I building, but do not include any information regarding Phase II units.[18]  (*See* Decl. § 1.14, Ex. C; Pl. Supp. Br. Ex. I.)

---

provisions reserving a withdrawal right, however, are identical.  (*Compare* Defs. Supp. Br. Ex. 1 §§ 1.18, 2.9, *with* Decl. §§ 1.18, 2.9.)

[14] The Act requires that if a plat depicts locations and dimensions of contemplated improvements, the future improvement must be labeled either "MUST BE BUILT" or "NEED NOT BE BUILT."  N.C. Gen. Stat. § 47C-2-109(c).  The survey plat did not make either of these designations as to Phase II.

[15] *See In re Hackley*, 212 N.C. App. 596, 601–02, 713 S.E.2d 119, 123 (2011) (holding that a court may take judicial notice of a publicly recorded deed).

[16] *See* N.C. Gen. Stat. § 47C- 2-109(b)(6a).

[17] *See id.* § 47C-2-109(b)(6).

[18] *See id.*

{25} The Court has been advised of no amendments to the Declaration. Units in Phase II have never been built. No effort has ever been undertaken to add Phase III to Skybridge Terrace.

{26} In early 2011, Plaintiff deeded Defendants Allen and Sublett separate interests in units of Skybridge Terrace and "an undivided interest in the Common Elements as described in the Declaration." (Defs. Supp. Br. Exs. 2, 3.)

{27} Plaintiff now wishes to withdraw the Phase II parcel.

## IV. STANDARD OF REVIEW

{28} Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. R. Civ. P. 56(c). An issue of fact is material

> if the facts alleged would constitute a legal defense, or would affect the result of the action, or if its resolution would prevent the party against whom it is resolved from prevailing in the action. The issue is denominated "genuine" if it may be maintained by substantial evidence.

*Integon Nat'l Ins. Co. v. Helping Hands Specialized Transp., Inc.*, ___ N.C. App. ___, 758 S.E.2d 27, 30 (2014) (quoting *Koontz v. City of Winston-Salem*, 280 N.C. 513, 518, 186 S.E.2d 897, 901 (1972)).

## V. ANALYSIS

### A. The Parties Raise Issues Appropriate for Declaratory Relief

{29} "[A] [d]eclaratory [j]udgment is the appropriate action to perform the duty of quieting title to real property." *Kirstein v. Kirstein*, 64 N.C. App. 191, 193, 306 S.E.2d 552, 553 (1983).

> The Superior Court has jurisdiction to render a declaratory judgment only when the pleadings and evidence disclose the existence of a genuine controversy between the parties to the action, arising out of conflicting contentions as to their respective legal rights and liabilities under a deed, will, contract, statute, ordinance, or franchise.

*Nationwide Mut. Ins. Co. v. Roberts*, 261 N.C. 285, 287, 134 S.E.2d 654, 656–57 (1964) (citations omitted). A court should issue a declaratory judgment "(1) when [it] will serve a useful purpose in clarifying and settling the legal relations at issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceeding." *Calabria v. N.C. State Bd. of Elections*, 198 N.C. App. 550, 554, 680 S.E.2d 738, 743 (2009) (alteration in original) (quoting *Augur v. Augur*, 356 N.C. 582, 588, 573 S.E.2d 125, 130 (2002)).

{30} Condominiums within North Carolina are subject to Chapter 47C of the North Carolina General Statutes. N.C. Gen. Stat. § 47C-1-102. To create a condominium, a developer must first file a declaration that meets certain statutory requirements. *See id.* § 47C-2-105, -107, -109. A declaration may not be recorded "unless all structural components and mechanical systems of all buildings containing or comprising any units thereby created are substantially completed in accordance with the plans." *Id.* § 47C-2-101(b). Moreover, "[i]f the boundaries of the units are not depicted, . . . then no units are created." *Id.* cmt. 6.

{31} Plats and plans are considered part of a declaration. *Id.* § 47C-2-109(a). A plat is required to show whether a contemplated improvement "MUST BE BUILT" or "NEED NOT BE BUILT." *Id.* § 47C-2-109(c).

{32} Though the Act delineates these specific requirements, it provides that, "If a declarant, in good faith, has attempted to comply with the requirements of this chapter and has substantially complied with the chapter, nonmaterial errors or omissions shall not be actionable." *Id.* § 47C-1-104(c).

{33} As discussed below, the Declaration did not comply with the Act's requirements in various respects. This has created a genuine controversy between Plaintiff and Unit Owner Defendants as to Unit Owner Defendants' interests in and Plaintiff's right to withdraw the Phase II parcel. This Court's declaratory judgment is necessary and appropriate to clarify and settle the legal relations at issue, and to quiet title as to both Phase I units and the Phase II real estate.

B.  **The Declaration Substantially Complied with the Act and Created Skybridge Terrace and Forty-Eight Phase I Units**

{34}    Neither Plaintiff nor Defendants Allen and Sublett argue that defects in the Declaration render it altogether ineffective to create any condominium at all. They join in seeking a declaratory judgment that the Unit Owner Defendants received valid deeds to Phase I condominium units in Skybridge Terrace.  However, mindful of the Act's clear requirement that all created condominium units be substantially complete at the time a declaration is recorded, the Court has independently examined whether the Declaration was adequate to create a condominium at all.  In so doing, the Court clears a potential cloud on title held by Phase I unit owners.

{35}    A condominium is created upon recording a declaration.  *Id.* § 47C-2-101 cmt. 1.  "A declaration . . . may not be recorded unless all structural components and mechanical systems of all buildings containing or comprising any unit thereby created are substantially completed in accordance with the plans[.]"  *Id.* § 47C-2-101(b).  A comment to that provision states that "[a] condominium has not been lawfully created unless the requirements of this section have been complied with."  *Id.* § 47C-2-101 cmt. 3.  Here, half of the units the Declaration purports to create were not near completion at the time the Declaration was recorded.

{36}    The Act contemplates that, where a declaration is statutorily deficient, a *de facto* condominium may still exist "if the nature of the ownership interest fits [the Act's] definition" of "condominium."[19]  *Id.* § 47C-1-102 cmt. 2.  The Act defines "condominium" as "real estate, portions of which are designated for separate ownership and the remainder of which is designated for common ownership solely by the owners of those portions.  Real estate is not a condominium unless the

---

[19] A defective declaration that creates a condominium is not necessarily invalid.  A court may strike noncompliant or incongruous portions of a declaration.  N.C. Gen. Stat. § 47C-2-103(a) ("All provisions of the declaration and bylaws are severable.").  Therefore, if necessary, this Court can sever the Declaration's provisions concerning the additional forty-eight units in Phase II, such that the Declaration submits Phases I and II for condominium ownership, but only the Phase I units for individual ownership.

undivided interests in the common elements are vested in the unit owners." *Id.* § 47C-1-103(7).

{37} The Declaration describes such an ownership scheme. (*See* Decl. Ex. E (setting out square footage of forty-eight units in Phase I and their respective percentage of undivided interest in common elements).) Undivided interests in the Common Elements are vested only in the existing unit owners. The fact that Unit Owner Defendants' interest in a portion of the Common Elements might be reduced by withdrawing a portion of real estate from the condominium does not change the basic ownership structure established upon filing the Declaration.

{38} In sum, the inclusion of Phase II in the description of Skybridge Terrace when no Phase II units were substantially complete does not defeat the creation of Skybridge Terrace or Phase I units. Condominium units in Phase I of Skybridge Terrace were validly created upon the recording of the Declaration and deeds to the Phase I unit owners were effective to convey valid interest in those condominium units, together with undivided interests in Common Elements.

C. <u>The Better Statutory Construction Is that the Phase II Parcel Was Included in the Condominium as a Common Element upon the Declaration's Filing, but that the Phase II Parcel Remained Subject to Declarant's Right to Withdraw It</u>

{39} The Act contemplates that where real property is submitted for condominium ownership, portions that do not qualify as units are created as common elements. Here, the Declaration described the condominium complex as extending to the Phase II parcel, but the Declaration and its incorporated attachments show that Phase II units had not yet been constructed on the Phase II parcel. The Act could potentially be read to mean that the Phase II real estate never became part of Skybridge Terrace, and reference to the forty-eight Phase II units was meaningless and ineffective because the Act requires that condominium units be substantially completed before they are legally created. Under such a construction, Unit Owner Defendants would never have acquired any interest in the

Phase II parcel, as it was never a part of the condominium as Common Elements or otherwise.

{40}   The Court believes the better statutory construction is that the Phase II real estate parcel became a part of the initial Common Elements of Skybridge Terrace, was subjected to the Act, but also remained subject to the Declarant's right to withdraw the Phase II parcel from the condominium, so long as the withdrawal right was properly reserved in accordance with the Act.  This interpretation better comports with the Act's purpose: to ensure purchasers get what they bargained for, based on the relevant declaration.  Because Phase II was depicted as part of the condominium complex in the Declaration, albeit subject to withdrawal, the Phase I unit owners could have formed a reasonable expectation that the Phase II parcel would be a part of Skybridge Terrace until it was properly withdrawn in accordance with the Act.

### i.   The Declaration Did Not Create Phase II Units

{41}   A condominium unit is "a physical portion of the condominium designated for separate ownership or occupancy, *the boundaries of which are described [by reference to plats or plans which comply with section 47C-2-109]*." N.C. Gen. Stat. § 47C-1-103(25) (emphasis added).  Section 47C-2-109 requires, among other things, that a registered land surveyor certify "that the plat or plans accurately depict the legal boundaries and the physical location of the units and other improvements relative to those boundaries," as required by statute.  *See Id.* § 47C-2-109(b)(6a).  Where the units' boundaries are not depicted, no units are created.  *Id.* § 47C-2-101 cmt. 6.

{42}   The Act provides that "a declaration . . . may not be recorded unless all structural components and mechanical systems of all buildings containing or comprising any units thereby created are substantially completed in accordance with the plans."  *Id.* § 47C-2-101(b).  Comment 5 to this section suggests that substantial completion of units at the time of recording is material because it "reduces the possibility that a failure to complete will upset the expectations of

purchasers or otherwise harm their interests in case the declarant becomes insolvent and no solvent person has the obligation to complete the unit." *Id.* § 47C-2-101 cmt. 5. If the Act did not require substantial completion at the time of recording, "serious problems would arise if the remaining units were never constructed and if no obligation to complete the construction could be enforced against any solvent person." *Id.*

{43} When the Declaration was recorded, Phase II units were not substantially completed, as construction on them had not even begun. Moreover, there was no certification that the plats or plans referenced in the Declaration accurately depicted the dimensions of the Phase II units. In fact, Phase II units are not delineated anywhere in the Declaration or referenced documents. Conversely, Phase I was substantially completed at the time of recording and does meet the requirements of section 47C-2-109.

{44} The Court concludes that the Declaration created Phase I units, but no Phase II units.

## ii. Nevertheless, the Phase II Real Estate May Still Be Included in the Condominium as Common Elements

{45} Declarant submitted its "Property" to the Act. (Decl. §§ 2.1, 2.2.) "Property" is defined as the real estate constituting "Phases I and II shown as part of Tract B2 Skybridge Terrace, LLC on map thereof recorded in Map Book 50, at Page 506 of the Mecklenburg County Public Registry and containing 1.351 acres." (Decl. § 1.16, Ex. A.) The relevant portion of that map is attached to this Order, Opinion & Judgment as Exhibit A.

{46} The Declarant clearly submitted both the parcel upon which Phase I units had been constructed and the Phase II parcel to the Act. It does not follow that the Phase II parcel was excluded from the Property Declarant made subject to the Act simply because the Phase II units were not substantially completed at the time the Declaration was recorded.

{47}     Where "the boundaries of units are not depicted, of course, then *no units are created.*" N.C. Gen. Stat. § 47C-2-101 cmt. 6 (emphasis added).  The Act does not state that a defect in the description of the units means that the property on which units were supposed to sit is excluded from the condominium.  Further, the Act provides that if, when a declaration is recorded, the declarant has failed to complete the required levels of construction for units that he has already conveyed, "[s]uch acts would create a cause of action in the purchaser under [s]ection 4-115, but would not affect the validity of the purchasers' [sic] title to the condominium." *Id.* § 47C-2-101 cmt. 8.  This indicates that noncomplying units and the property on which they sit are still included in a condominium complex, as any purchaser's title *to the condominium* is not affected.  The Court reads these provisions harmoniously to provide that the failure to construct Phase II units does not initially exclude the underlying real estate parcel from the condominium.  Rather, the parcel was subject to the Act's requirements, including that it could only be withdrawn consistent with the Act.

{48}     Persuasive support for this conclusion can be found in the holding and reasoning of the Rhode Island Supreme Court.  *See Am. Condo. Ass'n, Inc. v. IDC, Inc.*, 870 A.2d 434 (R.I. 2005).  The Rhode Island Condominium Act also provides that a declaration may not be recorded unless "all structural components and mechanical systems of the building containing or comprising any units thereby created are substantially completed," R.I. Gen. Laws § 34-36.1-2.01 (2014), and that plats or plans must show "[t]he location and dimensions of the vertical boundaries of each unit[ and] . . . [a]ny horizontal unit boundaries," *id.* § 34-36.1-2.09.  In *American Condominium Association*, the declaration purported to create certain units that were not substantially completed at the time of its recording.  *Am. Condo. Ass'n, Inc.*, 870 A.2d at 440.  The Rhode Island Supreme Court determined that the two parcels without units were initially included in the condominium.  *Id.* at 440.

{49}     In sum, the Court concludes that the better reasoned construction of the Act is that the Phase II real estate became and remains a part of the Common Elements of the condominium until the parcel is withdrawn from the condominium

upon a properly reserved and exercised right of withdrawal consistent with the Act. If Phase II was a separate "portion" of Skybridge Terrace, a properly reserved right to withdraw the Phase II parcel could not be barred by section 47C-2-110(d)(2) until Declarant conveyed a Phase II unit to a purchaser.

## D. The Phase II Parcel Was and Is a Separate "Portion" of Skybridge Terrace

{50}    In order to have the right to withdraw the Phase II parcel, Plaintiff must demonstrate that (1) the Phase II parcel is a separate portion of Skybridge Terrace for purposes of section 47C-2-110(d)(2), and (2) Declarant properly reserved and will timely exercise the right to withdraw that parcel from the condominium.  If the Phase II parcel is not a separate "portion" from Phase I, Declarant would not have the right to withdraw the Phase II parcel after it conveyed Phase I units.

{51}    The Act does not define "portion" or provide significant guidance on what constitutes a separate "portion" for purposes of reserving a right to withdraw. The undisputed facts of the case at hand, however, make clear that the Phase II parcel was and remains a separate and independent "portion" from Phase I.  The recorded plat referenced in the Declaration labels separate phases and contains a surveyed phase line separating the Phase I and Phase II parcels.  (Pl. Br. Supp. Ex. E.)  As noted, the Phase II real estate has a tax parcel identification number separate from Phase I and remains in Plaintiff's name.

{52}    This separate identity was clear at the time the Declaration was recorded and when each Unit Owner Defendant purchased his or her interest in the condominium.  (Pl. Supp. Br. Ex. C (showing all conveyances to Unit Owner Defendants made after Declaration recorded).)  Unit Owner Defendants could not reasonably conclude otherwise.  They were on notice when they purchased their units that the Phase II real estate was considered a separate portion.  Common Elements were allocated solely to Phase I owners.  The Declaration did not provide for reallocation of those percentage interests upon the later construction of Phase II. Phase I owners had no reason to expect that any part of the Phase II parcel was going to be dedicated to special improvements such as a clubhouse or a pool.

{53}     Without fairly accounting for these facts, Defendants Allen and Sublett nevertheless contend that any right to withdraw the Phase II parcel must be deemed to have been abandoned after Declarant conveyed a unit in Phase I.  They essentially argue that if the Phase II parcel was ever part of Common Elements, the conveyance of a Phase I unit, which included Common Elements, defeated withdrawal.  They make no attempt to give a reasoned definition of what the Act's term, "portion," should mean.  Instead, they argue only that they reasonably believed that they acquired an interest in the Phase II real estate when purchasing a Phase I unit because their respective deeds described the property conveyed as a specific unit "together with an undivided interest in and to the Common Elements, as described in the Declaration of Skybridge Terrace Condominiums recorded in Book 23980 at Page 818."  (Defs. Supp. Br. Exs. 2–3.)

{54}     The statute only prohibits withdrawal of a portion "after a unit *in that portion* has been conveyed to a purchaser."  N.C. Gen. Stat. § 47C-2-110(d)(2) (emphasis added).  The difficulty with Defendants Allen and Sublett's argument is that their position would render any right to withdraw any portion of a declared condominium meaningless when the Act clearly provides otherwise.

{55}     The fact that Phase I unit owners might enjoy an ownership interest in the Phase II real estate parcel until withdrawn does not, without more, support a conclusion that a conveyance of a unit in the Phase I parcel defeats a properly reserved right for the Declarant to withdraw the separate portion of the real estate reserved for Phase II.

{56}     Allowing Declarant to withdraw the Phase II parcel is consistent with the Act, which recognizes that partially divesting unit owners of the common elements in which they have an undivided, vested interest is an integral part of a condominium project to be developed in phases.  Comment 9 to section 47C-2-101 of the Act provides that

> [i]f only some of the buildings in which units which [sic] may ultimately be located have been "structurally" completed, the declarant may create a condominium in which he reserves particular development rights . . . .  In such a project, . . . the development rights

would be reserved to create additional units, either by adding additional real estate and units to the condominium, *by creating new units on common elements*, or by subdividing units previously created. The optional units may never be completed or added to the condominium; however, this will not affect the integrity of the condominium as originally created.

*Id.* § 47C-2-101 cmt. 9 (emphasis added). In other words, additional future units may be created on existing common elements, in which current unit owners have an interest, so long as the declarant's rights are properly reserved.[20]

{57}    The Court then turns to whether Plaintiff adequately reserved its right to withdraw the Phase II parcel and whether the time for exercising that right has expired.

E.  **Plaintiff Reserved and Retains a Right to Withdraw the Phase II Parcel**

{58}    To properly reserve a right to withdraw a portion of property from a condominium, the declarant must include a legally sufficient description of the land subject to those rights and a time limit within which it must exercise that right. N.C. Gen. Stat. § 47C-2-105(a)(8). "The Act imposes no maximum time limit for the exercise of those rights[.]" *Id.* § 47C-2-105 cmt. 9.

{59}    "[T]he Act excuses nonmaterial noncompliance with these requirements where the declarant has substantially complied with the statute." *In re Williamson Vill. Condos.*, 187 N.C. App. 553, 557, 653 S.E.2d 900, 902 (2007) (citing N.C. Gen. Stat. § 47C-1-104(c)).

{60}    Here, the Declaration reserves a right for Plaintiff

to complete the improvements indicated on the Plans; to maintain sales offices, models and signs advertising the Condominium on the Property; to exercise any development right as defined in Section 47C-

---

[20] The Court again finds reasoning of the Rhode Island Supreme Court persuasive. Like the North Carolina Act, the Rhode Island Condominium Act permits a declarant to withdraw a portion of real estate from a condominium, so long as no unit in that portion has been conveyed to a purchaser. R.I. Gen. Laws § 34-36.1-2.10(d)(2). In *American Condominium Association*, the court determined that because the declarant's reserved right to withdraw two unit-less parcels consisting entirely of common elements had already expired before the declarant exercised it, the two parcels "were, and remain, common elements." *Am. Condo. Ass'n*, 870 A.2d at 439–40. It follows that, had it acted timely, the declarant could have withdrawn the two parcels from the condominium even though they had earlier been a part of the common elements for those units which had been conveyed.

2-110 of the Act; to use easements over the Common Elements; to elect, appoint or remove members of the Board during the Declarant Control Period; to make the Condominium part of a larger condominium; and *to withdraw any portion of the Property from the Condominium*; and to add property to the Condominium, including but not limited to one additional phase, which is shown on the Plat as Phase Three.

(Decl. § 1.18 (emphasis added).) Notably, Declarant does not specify a time limit for its withdrawal right, a failure to strictly comply with the Act.

{61} The reservation meets the Act's other requirements. Pursuant to section 47C-2-105(a)(8), the Declaration contains a "legally sufficient description of the real estate" to which the withdrawal right applies: the recorded plat, incorporated by reference. The plat clearly delineates the Phase I parcel and the Phase II parcel as separate parcels and contains a surveyed line of demarcation between them. (*See* Pl. Supp. Br. Ex. E.) As earlier noted, the Phase II parcel is a separate portion, so withdrawing it would not contravene section 47C-2-110(d).

{62} In deciding whether omission of a time limit in a reservation of a special declarant right is material, the North Carolina Court of Appeals examined (1) whether the entire declaration generally complied with the Act, and (2) whether the omission of a time limit was at all disputed at any time during the business relationship between the parties. *In re Williamson Vill. Condos.*, 187 N.C. App. at 557–59, 653 S.E.2d at 902–03. Here, those factors demonstrate that there was no material omission; that Declarant substantially complied with the Act and properly reserved a right to withdraw the Phase II real estate.

{63} The Declaration, "for the most part, satisfies the [Act's requirements]." *Id.* at 557, 653 S.E.2d at 902 (quoting *N.C. Nat'l Bank v. Burnette*, 297 N.C. 524, 532, 256 S.E.2d 388, 393 (1979)). The Declaration is a forty-six-page document that includes the following: (1) the name of the condominium complex and condominium association, in compliance with section 47C-2-105(a)(1) of the Act; (2) the name of the county in which the real estate is located, in compliance with section 47C-2-105(a)(2) of the Act; (3) an adequate description of the real estate within the condominium, in accordance with section 47C-2-105(a)(3) of the Act; (4) the number

of existing and potential future units in the condominium, pursuant to section 47C-2-105(a)(4) of the Act;[21] (5) the boundaries and identifying number of each unit, in compliance with section 47C-2-105(a)(5) of the Act; (6) a description of limited common elements and areas, as required under section 47C-2-105(a)(6) of the Act; (7) a description of reserved development and declarant rights, including an explanation of which fixed portions are subject to those rights, in accordance with section 47C-2-105(a)(8) of the Act; (8) allocations for interests in the common elements, liability for common expenses, and voting rights, as required under sections 47C-2-105(a)(11) and -107 of the Act; (9) restrictions on the use and occupancy of the units, pursuant to section 47C-2-105(a)(12) of the Act; (10) a recitation of easements and licenses affecting the condominium, in compliance with section 47C-2-105(a)(13) of the Act; and (11) plans and a plat for the condominium, as required under section 47C-2-109. *See In re Williamson Vill. Condos.*, 187 N.C. App. at 557–58, 653 S.E.2d at 902–03 (noting declaration at issue complied with each of these provisions).

{64}　　The Declaration also includes the following nonmandatory information: (1) rules regarding unit additions, alterations, and improvements, pursuant to section 47C-2-111 of the Act; (2) rules for amending the Declaration and bylaws, as provided under sections 47C-2-117 and 3-106 of the Act; (3) procedures for terminating the condominium, as delineated in section 47C-2-118 of the Act; (4) provisions regarding the condominium association and executive board, in accordance with sections 47C-2-101, -102, and -103 of the Act; (5) provisions governing an initial period of declarant control over the condominium association, as contemplated in section 47C-3-103(d) of the Act; (6) terms regarding upkeep and damages, pursuant to section 47C-3-107 of the Act; (7) provisions regarding insurance, as provided under section 47C-3-113 of the Act; (8) provisions regarding

---

[21] Though the Declaration does, in one portion, lump the existing units from Phase I and the "planned" units from Phase II together, it is clear from the face of the documents that only the Phase I units existed at the time of recording. (*See* Decl. § 2.3 ("Developer, . . . does hereby divide the Property into ninety-six (96) Units . . . . Each phase shall contain 48 units . . . . Phase I has been built and Phase II is planned but not yet built.").)

assessments for common expenses, as contemplated in section 47C-3-115 of the Act; and (9) provisions for levying against units for unpaid assessments, in accordance with section 47C-3-116 of the Act. *See id.* at 558, 653 S.E.2d at 903 (noting the declaration at issue complied with each of these nonmandatory provisions).

{65} Where a declaration generally complies with the Act, as does Plaintiff's Declaration, and no evidence indicates that the time limit on the declarant's rights was disputed during the relationship between the parties, omission of a time limit is insubstantial. *Id.*

{66} In the present case, Defendants Allen and Sublett do not assert that the inclusion or omission of a time limit was material to them. Moreover, they have failed to present or forecast evidence that any of the current unit owners disputed or were concerned with the lack of time limit on Declarant's right to withdraw any portion of the condominium. Defendants Allen and Sublett purchased units in Skybridge Terrace without regard to the omission of the time limit in the Declaration and have never expressed concern over its absence.

{67} Rather, in seeking to avoid the clear reservation of the withdrawal right in the Declaration, Sublett and Allen turn to a reading of the 2006 Public Offering Statement, providing that Declarant did not retain any option to withdraw. (Allen Aff. ¶¶ 9, 16; Sublett Aff. ¶¶ 3–4.) Their position, however, is unavailing. The Public Offering Statement makes clear that if it conflicts with the Declaration, the Declaration controls. (Public Offering Statement 2.)

{68} In sum, Declarant reserved the right to withdraw the Phase II real estate consistent with the Act and the time for exercising that right has not expired.

## VI. CONCLUSION

{69} Based on the foregoing, the Court GRANTS in part Plaintiff's Motion for Summary Judgment to the extent it asks for a declaration of rights, DENIES Plaintiff's request for reformation as moot, and DENIES Defendants Allen and Sublett's Motion for Summary Judgment.

## VII.   JUDGMENT

{70} It is hereby ORDERED, DECLARED, and ADJUDGED that:

a.  Upon its recordation on July 23, 2008, the Declaration of Skybridge Terrace Condominiums lawfully created a condominium.

b.  Skybridge Terrace Condominiums included validly created Phase I units.  No condominium unit in Phase II of Skybridge Terrace Condominiums has ever been created.

c.  The Phase II real estate, as depicted on the plat recorded in the Office of the Register of Deeds for Mecklenburg County, North Carolina in Condominium Unit Ownership File No. 921 constituted part of Skybridge Terrace Condominium's Common Elements at the time the Declaration was recorded.

d.  Title to the Phase I units is not clouded by the failure of the Declaration to create Phase II units.

e.  The Phase I real estate and the Phase II parcel were and at all times have remained separate portions of Skybridge Terrace Condominiums for purposes of section 47C-2-110(d)(2) of the Act.

f.  Plaintiff has never conveyed a unit in the Phase II portion of Skybridge Terrace Condominiums.

g.  Plaintiff, as Declarant, properly reserved a right to withdraw the Phase II parcel from Skybridge Terrace Condominiums, and the right to withdraw has not expired.

h.  Upon withdrawing the Phase II real estate:

  i.   Plaintiff may convey that parcel free and clear of claims that any Phase I unit owner, including all Unit Owner Defendants, may assert in the Phase II parcel; and

  ii.  Unit Owner Defendants may convey clear title to Phase I units, including the percentage allocated to such owner by Exhibit E to the Declaration in Common Elements, but such Common Elements shall be limited to the Phase I real estate parcel.

i. This declaratory judgment, together with the dismissal of other claims, constitutes a final adjudication of all claims between Plaintiff and Unit Owner Defendants. Claims against Attorney Defendants have been resolved pending entry of final judgment in Plaintiff's favor on its claims against Unit Owner Defendants. There is no just reason for delay in entering final judgment as to Unit Owner Defendants pursuant to Rule 54(b).

j. This Order, Opinion & Judgment shall therefore constitute a final judgment to quiet title as to the Phase II parcel and all Phase I units, together with any associated Common Elements.

k. The Court certifies, pursuant to Rule 54(b) of the North Carolina Rules of Civil Procedure, that

   i. this action involves multiple claims and parties;

   ii. this Order, Opinion & Judgment is a final judgment as to the claims for declaratory judgment and reformation; and

   iii. there is no just reason for delay in entry of a final judgment granting Plaintiff's claim for declaratory judgment against Unit Owner Defendants and dismissing the claim for reformation.

This the 23rd day of March, 2015.

# EXHIBIT A

